UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wendy Satterwhite, ) | Civil Action No. 5:14-1152-JMC-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | REPORT AND RECOMMENDATION |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.   Relevant Background

   A.   Procedural History

On October 4, 2010, Plaintiff filed applications for DIB and SSI alleging a disability onset date of May 11, 2007. Tr. 137-49.[1] Plaintiff's applications were denied initially, Tr. 124-27, and on reconsideration on August 24, 2011, Tr. 132-34. On September 6, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 135. The request was acknowledged by the Social Security Administration ("SSA") on September 19, 2011. Tr. 72. On July 31, 2012, ALJ Gregory M. Wilson conducted a hearing in Greenville, South Carolina,

---

[1] The abbreviation "Tr." refers to the transcript of the record before the Commissioner. It is found on the docket of this case at ECF Nos. 12-1 through 12-8.

taking testimony from Plaintiff and Vocational Expert ("VE") Karl S. Rockwell Weldon. Tr. 77-116. ALJ Wilson issued a decision dated October 16, 2012, denying Plaintiff's claims. Tr. 11-42. Plaintiff filed a request for Appeals Council review dated October 30, 2012. Tr. 6. The Appeals Council denied review on February 6, 2014, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-3. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 26, 2014. ECF No. 1.

  B. Plaintiff's Background

Plaintiff was born on January 3, 1972. She was thirty-five years old as of her alleged onset date and forty years old when the ALJ rendered his decision. *See* Tr. 21. Plaintiff finished the twelfth grade, but testified that she was in special education classes throughout school, resulting in her receipt of a "certificate" instead of a diploma. Tr. 86, 234-47, 448. Plaintiff's prior work history includes work as a cleaner and food-preparation worker. Tr. 40, 108-09. Plaintiff alleged that she became unable to work on May 11, 2007.[2] Tr. 137. In connection with her DIB and SSI claims, Plaintiff alleged that she had a disc problem, a pinched nerve, back problems, and learning problems. Tr. 180.

  C. The Administrative Hearing

    1. Plaintiff's Testimony

Plaintiff appeared with counsel at her administrative hearing on July 31, 2012. Tr. 79. Plaintiff testified that she stopped working in 2007 because she was hurt in a car accident. Tr. 87. She testified that she never obtained a driver's license, but had been taught how to ride a bus. Tr.

---

[2] There is a conflict in the record regarding the reason for Plaintiff's leaving her last employment. A psychologist's report indicates that she left because of a slip and fall incident, Tr. 448 and a disability pain record indicates that her back pain began when she fell at work in 1993, Tr. 193, and fell again in 2003, Tr. 195, but her hearing testimony and other record evidence indicates that she was injured in a car accident in 2007. Tr. 87, 552, 555, 579, 585.

2

88-89. Plaintiff also testified that her sister completed some of the Social Security forms for her, helps her care for her son, and writes checks for her. Tr. 90-92. When asked what medical condition interfered the most with her ability to work, Plaintiff testified, "[m]y lower back on my right hand side going down to my right leg . . . I definitely have pains everywhere in my body." Tr. 94-95. Plaintiff testified that she is able to go out by herself, but she is not able to care for her son, prepare a grocery list, or make change without assistance. Tr. 91, 102-03. She testified that she enjoys reading magazines and love stories. Tr. 103.

        2.      VE's Testimony

The VE at the administrative hearing identified Plaintiff's past relevant work ("PRW") as a cleaner as light, unskilled work. Tr. 108-09. He further testified that Plaintiff's PRW as a food-preparation worker was light, low semi-skilled work. Tr. 109. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and experience, who was restricted to a limited range of medium work, requiring only simple, one-to-two-step tasks, in a low-stress environment (defined as occasional contact with the public, co-workers, and supervisors). The VE testified that, despite those limitations, Plaintiff could perform her PRW as a cleaner, as well as alternative work as a housekeeper and dishwasher. Tr. 109-10. Plaintiff's attorney asked the VE to assume additional physical limitations, and, along with the mental limitations set forth by the ALJ in the prior hypothetical question, additional mental limitations of: few changes in the work routine, gradually introduced; pace demands not at the very fastest production pace; and reasoning level one jobs as defined in the *Dictionary of Occupational Titles* (*i.e.*, applies common sense understanding to carry out simple one-or-two-step instructions, deal with standardized situations with occasional or no variables in or from these situations encountered on the job). The VE testified that, despite those additional limitations, such an individual could perform sedentary work as an assembler and inspector. Tr. 111-12.

II.    Discussion

    A.    The ALJ's Findings

In his October 16, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since May 11, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the left shoulder, status post surgery; degenerative disc disease, cervical and lumbar spine, headaches and borderline intellectual functioning. (20 CFR 404.1520(c), 404.1525, and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b). I specifically find the claimant can lift or carry, push or pull, 50 pounds occasionally and 25 pounds frequently and she can sit, stand or walk, each, for 6 hours of an 8-hour workday. In addition, I find that claimant can never climb a rope, ladder or scaffold, but she can occasionally climb ramps or stairs and she can occasionally balance, stoop, kneel, crouch and crawl. The claimant is limited to occasionally reach overheard with her left upper extremity; she should avoid concentrated exposure to vibrations and hazards. I also find that she is limited to simple, routine, 1-2 step tasks and she requires a low-stress work environment (only occasional contact with the public, co-workers, and supervisors).

6. The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2007, through the date of this decision.

Tr. 13-42.

B.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. These

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") which the Social Security Administration ("the Agency") considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at step three).

considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step). A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpt. P, §§ 404.1520(a), (b); 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Id.*; *see also Richardson v. Perales*,

402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff contends that the ALJ's finding that her mental impairment did not meet Listing 12.05C is not supported by substantial evidence because the ALJ improperly created his own diagnosis not found in any medical report and then improperly discredited her IQ scores by relying on evidence of activities of daily living and adaptive functioning which were not inconsistent with mental retardation, underemphasizing or ignoring other record evidence that was supportive of the Listing's requirements, and by failing to employ a medical advisor to provide an opinion on the Listing 12.05C issue. Pl's. Br. 15-23, ECF No. 16. Defendant responds that the ALJ's finding that Listing 12.05C was not met by Plaintiff's evidence is supported by substantial evidence showing that Plaintiff's levels of adaptive functioning exceeded that

required under the Listing. Def's. Br. 8-9, ECF No. 19. Defendant also responds that Plaintiff did not sustain her burden of proof and the ALJ properly rejected the suggestion that he enlist the services of a medical advisor. *Id*. at 10-11. Plaintiff replies that the ALJ improperly diagnosed Plaintiff with "borderline intellectual functioning" although no medical expert provided that diagnosis, creating a need for a medical advisor to review the evidence and provide an opinion about whether or not Listing 12.05C is met. Pl's. Reply Br. 2, ECF No. 20.

The Social Security regulations provide steps that must be applied in evaluating mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ also considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." 20 C.F.R. §§ 404.1520a(c)(2); 416.920a(c)(2); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C-H. The ratings for the first three functional areas -- activities of daily living; social functioning; and concentration, persistence, or pace -- consist of a five-point scale: none, mild, moderate, marked,

and extreme. 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). The fourth functional area -- episodes of decompensation -- uses a four-point scale: none, one or two, three, and four or more. *Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. at 530. It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d).

Listing 12.05 currently refers to intellectual disability[4] and states:

Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

---

[4] Effective August 1, 2013, the SSA promulgated a final rule substituting the term "mental retardation" with "intellectual disability." *See Change in Terminology: "Mental Retardation" to "Intellectual Disability*," 78 Fed. Reg. 46,499 (Aug. 1, 2013). The substance of the Listing, including the criteria, remains unchanged. The ALJ's decision in this case predates this language change and uses the term "mental retardation" in connection with its Listing analysis.

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In *Hancock v. Astrue*, the Fourth Circuit held that the first prong of Listing 12.05 analysis "requires a showing of 'deficits in adaptive functioning initially manifested during the developmental period.'" *Hancock*, 667 F.3d 470, 473 (4th Cir. 2012). The second prong "requires the satisfaction of one of four additional requirements." *Id*. The court held that "even if the ALJ's finding concerning Prong 2 of Listing 12.05C did not rest on substantial evidence, we would still be required to affirm the ALJ's decision if his finding with regard to Prong 1 was based on substantial evidence." *Id*. at 475. The Fourth Circuit has provided instruction on the factors that determine deficits in adaptive functioning, noting that the deficits "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). Regarding the IQ-score component of subparts B, C, and D of Listing 12.05, the Fourth Circuit held in *Hancock*, and other courts agree, that an ALJ may reject an IQ score that is the only such score in the record in reliance on evidence of adaptive functioning such as previous work and other activities of daily living and other evidence contradicting the score. *Hancock*, 667 F.3d at 474 ("[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record."); *see Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior."); *Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991) (scores inconsistent with job history, past medical records,

and showing of good memory); *see also Lax v. Astrue*, 489 F.3d 1080, 1086-87 (10th Cir. 2007) (scores not accurate reflection of intellectual capabilities in light of other evidence); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003) (scores inconsistent with ability to care for oneself and perform activities of daily living); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998) (scores derived from "first and only meeting" with examiner and were inconsistent with record of functional ability and prior medical record); *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (scores inconsistent with academic achievement; claimant trying to appear unfavorable).

In this case, the ALJ impliedly found that Plaintiff's intellectual impairment, which he described as "borderline intellectual functioning," Tr. 25, and which at least one psychologist called "cognitive disorder, not otherwise specified," Tr. 450, did not meet the requirements of Listing 12.05C because her reported levels of adaptive functioning precluded a finding of a valid IQ score. Although the ALJ did not explicitly say that he did not accept the IQ scores as valid in connection with his somewhat brief analysis of Listing 12.05C, he specifically referenced the levels of adaptive functioning that were explicitly analyzed in connection with his consideration of Listing 12.05D, Tr. 25-26, and in connection with his RFC analysis. Tr. 32. The ALJ stated that "[t]he examiner . . . noted that while the claimant's tested IQ was in the mentally retarded range, her descriptions of her adaptive functioning was [sic] at least in the borderline range based on her history and descriptions of her activities of daily living." Tr. 27.[5] The ALJ then cited to the Fourth Circuit's *Hancock* case, Tr. 27 n.2, and to two cases from the Sixth and Eleventh Circuits, which the ALJ indicated held the same as *Hancock* that "[a]n ALJ has discretion to

---

[5] Based on his citation to the record at this point in the decision, the "examiner" to whom the ALJ referred is psychologist Joseph K. Hammond, Ph.D., who conducted IQ testing, resulting in a full scale IQ score of 63. Tr. 450. The ALJ gave "great weight" to Dr. Hammond's opinion that, despite her IQ score in the "mentally retarded" range, Plaintiff's levels of adaptive functioning indicated "borderline range." Tr. 34, 450.

11

assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Tr. 27. Thus, it is sufficiently clear that the ALJ did not accept Plaintiff's IQ scores as valid based on his consideration of the other record evidence that he analyzed in connection with his consideration of Listing 12.05's "D criteria." *See, e.g., Gill v. Colvin,* No. 1:10CV871, 2014 WL 238398 (Jan. 22, 2014) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)) (ALJ's discussion of a relevant issue is sufficient as long as it " provides 'an accurate and logical bridge' between the evidence of record and the ALJ's implicit decision . . ."), *report and recommendation adopted*, 2014 WL 897007 (M.D.N.C. Mar. 6, 2014); *Jones v. Comm'r of Soc. Sec.*, No. 1:10CV185, 2012 WL 1085658 (N.D.W. Va. Mar. 30, 2012) (same); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *17 (D.S.C. Aug.10, 2009) (ALJ's implicit findings were not reversible error because the narrative discussion as a whole was sufficient to "'connect the dots'" between his conclusions regarding the claimant's RFC and the record evidence).

In connection with his analysis of the required criteria under Listing 12.05D, the ALJ found that Plaintiff's evidence showed only "mild restriction" in activities of daily living, "moderate difficulties" in social functioning, and "moderate difficulties" in the function of concentration, persistence, or pace. The ALJ also found that Plaintiff had not had any episodes of decompensation. Tr. 26. As support for his findings in this regard, the ALJ specifically noted that Plaintiff is able to shower, cook, dress herself, do dishes and laundry, and be involved with her son with some assistance from her sister. Tr. 25. The ALJ also noted that Plaintiff read books and magazines, watched television, took public transportation, paid bills with her sister's help, shopped and went out to eat with a friend, and spent time with neighbors. Tr. 26. Elsewhere in the decision, in connection with his RFC determination, the ALJ noted that he declined Plaintiff's counsel's suggestion that he obtain testimony from a "medical expert concerning

adaptive function . . . because the evidence of record provides an abundance of information concerning adaptive function." Tr. 32. In this portion of the decision, the ALJ reiterated many of Plaintiff's activities of daily living that he noted as support for his Listing-related findings and also noted that medical reports in the record indicated that Plaintiff's memory was "normal" and that she was "alert and oriented" and that she was able to comply with her medication regimen and provide her medical providers with her medical history. Tr. 32. The ALJ also noted that Plaintiff's past work was "semiskilled" and that she had been employed for "14 years." *Id*. The ALJ indicated that the record evidence showing the recited activities of daily living and level of adaptive functioning persuaded him that "the claimant is functioning in the borderline range." *Id*.

Initially, despite Plaintiff's contentions otherwise, the ALJ's use of the terminology "borderline intellectual functioning" to describe Plaintiff's mental impairment despite the absence of a specific diagnosis from a medical provider using those terms in the record does not present reversible error. While an ALJ is required to consider and weigh available and relevant medical reports, he or she is not bound by any particular medical provider's diagnosis. *See, e.g.*, *Trujillo v. Colvin*, No. 13-cv-03217-MJW, 2014 WL 4724384, at *4 (D. Colo. Sept. 22, 2014); *McClain v. Comm'r of Soc. Sec.*, No. 1:13CV00051, 2014 WL 517459, at *6 (N.D. Oh. Feb.7, 2014); *Bouldin v. Colvin*, No. 3:11-1019, 2013 WL 2296158, at *13 (May 24, 2013), *report and recommendation adopted*, 2014 WL 878350 (M.D. Tenn. Mar. 5, 2014). Here, the ALJ clearly considered and weighed all the relevant medical evidence, including the report from Dr. Hammond containing a diagnosis of "cognitive disorder, not otherwise specified," Tr. 33-40, and Plaintiff does not contest the weight assigned to any of the medical evidence. The result of that consideration and weighing of the few reports addressing Plaintiff's mental impairment was the ALJ's determination that Plaintiff's condition did not meeting Listing 12.05C (or any of the other parts of Listing 12.05) for mental retardation, because, consistent with Dr. Hammond's

13

opinion, her exhibited activities of daily living and her only mild or moderate restrictions or deficits in the recognized areas of adaptive functioning were inconsistent with mental retardation despite the presence of facially qualifying IQ scores. Thus, whether the ALJ had specifically adopted Dr. Hammond's diagnosis of "cognitive disorder, not otherwise specified" or whether he called Plaintiff's mental impairment "borderline intellectual function," the result is the same: Plaintiff did not meet the "mental retardation" Listing. *See Diagnostic and Statistical Manual of Mental Disorders* 42 (text rev., 4th ed. 2000) ("Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."). No error is shown by the ALJ's use of the term "borderline intellectual functioning" to describe Plaintiff's mental impairment.

Additionally, having reviewed the ALJ's decision and the record as a whole, the undersigned finds that the ALJ reasonably discredited Plaintiff's IQ scores based on substantial contradictory evidence that was before him. Review of the record discloses substantial evidence to support the ALJ's finding that Plaintiff did not prove that her IQ scores were valid and conclusive of her real level of intellectual functioning. For example, Plaintiff's own hearing testimony was that she could not work because of her exertional impairments and pain. She did not mention low intellectual function as a reason for not working. Tr. 94-95. Also, the extensive medical reports from Plaintiff's long-term treating physician at Millstone Family Medicine do not include references to complaints about or findings of low intellectual function, mental retardation, or intellectual disability. Tr. 347-437, 590-623. As noted by the ALJ, the report from the only psychologist to physically examine Plaintiff and perform IQ testing specifically concluded that Plaintiff's levels of adaptive functioning, shown through her reported activities of daily living and history, contradicted the scores she attained on the testing and raised her into

"the borderline range."[6] Tr. 450. The ALJ's findings of no "marked" limitations in the three areas of adaptive functioning under Listing 12.05 and no periods of decompensation are fully supported by the reports from the non-examining, consulting psychologists Ellen Emo, Ph.D. and Richard Waranch, Ph.D. Tr. 463, 541. Furthermore, Plaintiff's responses to claim-related inquiries, her statements and history provided to physicians, and her hearing testimony showed that she was able to provide adequate self-care, handle personal finances with minimal assistance, and had, historically, been a consistently employed person. Tr. 88-91, 102-06, 193-211. While it is true that work history alone cannot preclude benefits where the Listing 12.05C criteria are otherwise met, *see Luckey v. U. S. Dep't HHS*, 890 F.2d 666, 669 (4th Cir. 1989), both the Fourth Circuit and this court have held that it can be relevant in determining whether an IQ score is valid. *Hancock*, 667 F.3d at 475-76 (concluding that the ALJ's finding that the claimant did not manifest requisite deficits in adaptive functioning was supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); *Parks v. Colvin*, No. 5:13-868-BHH-KDW, 2014 WL 4199055, at **12-13 (D.S.C. Aug. 20, 2014) (work history properly used to support finding of no deficits in adaptive function); *Harts v. Astrue*, No. 0:10-1893-CMC-PJG, 2012 WL 529982, at *6 n.3 (Jan. 30, 2012) (distinguishing *Luckey* because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning) *adopted*, 2012 WL 529980 (D.S.C. Feb.17, 2012). Here, the ALJ did partially rely on Plaintiff's work history to discredit her IQ scores, but he also relied on other record evidence of Plaintiff's activities of daily living and

---

[6] Plaintiff argues that Dr. Hammond's diagnosis and his reference to "borderline range" is ambiguous. ECF No. 16 at 22-23. However, Dr. Hammond provided the only detailed psychological report from an examining medical provider in the record, and the ALJ was in the best position to resolve any ambiguity that might have existed in light of other record evidence. The ALJ obviously did so when he determined that the report was entitled to great weight and that it supported his decision. *See Doss v. Dir., Office of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995) (ALJ had the duty to find facts and consider the import of conflicting evidence).

of her relatively mild or moderate deficits in adaptive functioning as support for his findings that Plaintiff did not prove mental retardation under Listing 12.05C. Under applicable law, such reliance was legally correct and his conclusion was reasonable. *See Hancock*, 667 F.3d at 475 ("[I]n discrediting the IQ scores, the ALJ relied on ... inconsistency with both the claimant's actual functioning and with the notes of treating psychiatrists."); *see also Sechrist v. Colvin*, No. 4:13-CV-167-D, 2014 WL 4162384, at *7 (E.D.N.C. July 31, 2014) (substantial evidence supported finding that Listing 12.05 not met despite "mild mental retardation" diagnosis where ALJ relied on claimant's activities of daily living "maintaining a driver's license, playing with his child, shopping, and performing housework" and past "semi-skilled" employment); *King v. Colvin*, No. 6:13-CV-02101-DCN 2015 WL 1313085, at *2 (D.S.C. Mar 24, 2015) (affirming finding of inapplicability of Listing 12.05 where ALJ discounted IQ scores based on presence of evidence showing minimal deficits in adaptive functioning including previous work experience and significant daily activities); *Weatherford v. Colvin*, No. 6:13-1885-RMG, 2014 WL 3881056, *9-11 (D.S.C. Aug 05, 2014) (same). Because Plaintiff did not prove the "first prong" of Listing 12.05C: a valid IQ score of 60 through 70, the fact that the ALJ found other severe impairments that imposed "an additional and significant work-related limitation of function," which would satisfy the "second prong" is irrelevant because, as previously noted, a claimant must satisfy all requirements of the Listing upon which he or she relies. *See Sullivan v. Zebley*, 493 U.S. at 530; *see also* 20 C.F.R. §§ 404.1525(d), 416.925(d). Although Plaintiff argues that the ALJ improperly discredited her IQ scores despite record evidence showing special-education classes, receipt of a certificate and not a diploma, significant assistance from her sister to complete some activities of daily living, and participation in a job-training program before working at arguably menial jobs, ECF No. 16 at 20-23, close review of the record shows that the ALJ's Listing 12.05C decision is supported by substantial evidence even if Plaintiff can point to

some contradictory evidence. *See Craig v. Chater*, 76 F.3d at 589 (district court should defer to the Commissioner's findings if they are legally correct and supported by substantial evidence despite the presence of other, arguably contradictory, evidence in the record); *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence.").

Finally, Plaintiff's argument that the ALJ should have obtained a medical advisor to opine on whether or not Plaintiff's condition meets or is medically equal to Listing 12.05, ECF Nos. 16 at 23; 20 at 2, is also without merit because it is Plaintiff's burden, not the Commissioner's, to prove that a Listing is met. As previously noted, it is settled in this Circuit that an ALJ can disregard the only available IQ scores in the face of substantial contradictory evidence in the record, and that it is the Plaintiff's burden, not the Commissioner's burden, to prove that a Listing is applicable in a disability claim.[7] *See Sullivan v. Zebley*, 493 U.S. at 530-31; *Hancock*; 667 F.3d at 476; *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). While the regulations do permit an ALJ to seek additional medical evidence, the ALJ is not required to do so when there is already sufficient evidence in the record to permit a full evaluation of the claim. *See Foster v. Halter*, 279 F.3d 348, 355-56 (6th Cir. 2001). The burden lies with the claimant because she is "in a better position to provide information about [her] own medical condition."

---

[7] It is notable that Plaintiff was represented by legal counsel before, during, and after the ALJ hearing, but, although she now complains that expert opinion on Listing 12.05C is missing from the record, ECF No. 16 at 22-23, her counsel did not present any independent medical evidence going to the issue of Plaintiff's asserted mental impairment either during the ALJ hearing or before the Appeals Council. Tr. 1-3 (Appeals Council decision does not reference presentation of additional evidence); 5-6 (Plaintiff's request for Appeals Council review does not seek to introduce additional evidence). *See Glenn v. Sec'y of HHS*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.").

*Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987); 20 C.F.R. §§ 404.1512(a), 416.912(a). In this case, the ALJ specifically noted Plaintiff's counsel's suggestion that another medical expert be consulted regarding Plaintiff's adaptive functioning, but he determined that "the evidence of record provides an abundance of information concerning adaptive function." Tr. 32. As indicated above, there was substantial evidence in the record to support the ALJ's findings regarding Plaintiff's adaptive functioning. Thus, the ALJ did not abuse his discretion in declining the counsel's suggestion. Accordingly, the undersigned finds that the ALJ's findings regarding Listing 12.05C are legally sound and supported by substantial evidence and do not present reversible error.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record evidence regarding Plaintiff's intellectual impairment, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 16, 2015                                                                Kaymani D. West
Florence, South Carolina                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).